UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )        CIVIL ACTION NO.
VS.                            )
                               )        3:08-CV-2088-G
MANKENGO MWALUMBA,             )
                               )        **ECF**
            Defendant.         )

MEMORANDUM OPINION AND ORDER

Before the court are the cross-motions for summary judgment of the plaintiff United States of America ("the plaintiff" or "the United States") (docket entry 21) and the defendant Mankengo Mwalumba ("the defendant" or "Mwalumba") (docket entry 22).  For the reasons discussed below, the defendant's motion is denied, and the plaintiff's motion is granted.

I. BACKGROUND

A. Factual Background

This is a civil action brought by the United States under 8 U.S.C. § 1451(a) to revoke its grant of citizenship to the defendant, who was admitted to United States citizenship on September 17, 1996.  Complaint to Revoke Naturalization

("Complaint") at 1, 3; Certificate of Naturalization at 1, *located in* Appendix to Plaintiff's Brief for Summary Judgment ("Plaintiff's Appendix") at 17.  The complaint alleges that Mwalumba was statutorily ineligible to be naturalized as a citizen and that his naturalization can be revoked on either of two grounds: because it was illegally procured, or because it was procured by concealment of a material fact or by willful misrepresentation.  Complaint at 4-8; *see generally* 8 U.S.C. § 1451(a).  Because the court ultimately finds that the United States is entitled to summary judgment on its claim that Mwalumba's citizenship was illegally procured, the court does not address the claim that Mwalumba's citizenship was procured by concealment of a material fact or by willful misrepresentation.

The following facts are relevant to the United States' claim that Mwalumba's naturalization was illegally procured.  On March 22, 1999, Mwalumba entered into a plea agreement with the United States Attorney for the Northern District of Texas ("the Plea Agreement").  Plea Agreement in Case Number 3:98-CR-378-K ("Plea Agreement") at 1, *located in* Defendant's Appendix for Motion for Summary Judgment and Brief in Support Thereof ("Defendant's Appendix") at 14.  On July 2, 1999, pursuant to the terms of the plea agreement, Mwalumba pled guilty to and was convicted of, *inter alia*, the following three felony offenses.  *See* Judgment in a Criminal Case, Case Number 3:98-CR-378-K ("Criminal Judgment") at 1, *located in* Plaintiff's Appendix at 35; *see also* Presentence Report in Case Number 3:98-CR-378-

K ("Presentence Report") at 1, *located in* Defendant's Appendix at 53. The first was Fraud and Misuse of I-94 Arrival/Departure Record Card in violation of 18 U.S.C. § 1546(a) ("Fraud and Misuse I"). Mwalumba committed this offense on May 23, 1995. The second was False Statement in violation of 18 U.S.C. § 1001 ("False Statement"). Mwalumba also committed this offense on May 23, 1995. The third was Fraud and Misuse of Identification Document in violation of 18 U.S.C. § 1546(b) ("Fraud and Misuse II). Mwalumba committed this offense on July 14, 1995. Criminal Judgment at 1, *located in* Plaintiff's Appendix at 35; Presentence Report at 1, *located in* Defendant's Appendix at 53.

The defendant's answer states that he denies the allegations of the plaintiff's complaint pertaining to these three offenses and notes that the "defendant [was] not charged with these offenses until on or about November 5, 1998 and was not convicted until July 2, 1999." Defendant's Original Answer at 2. This purported denial thus admits that Mwalumba was convicted of these three offenses and does not deny that Mwalumba committed the offenses of which he was convicted. In any event, the law in this circuit is that a prior guilty plea is sufficient to establish in subsequent civil litigation all facts that were essential to proving the elements of each crime. *Johnson v. Sawyer*, 47 F.3d 716, 722 n.13 (5th Cir. 1995) (en banc); *Brazzell v. Adams*, 493 F.2d 489, 490 (5th Cir. 1974). Therefore, Mwalumba is collaterally

estopped from denying in this case that he engaged in any of the conduct for which

he was convicted.  See *In re Grothues*, 226 F.3d 334, 339 (5th Cir. 2000).

B. <u>Procedural Background</u>

Both the plaintiff and the defendant have moved for summary judgment.

Summary judgment is proper when the pleadings, depositions, admissions, disclosure

materials on file, and affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c)(2).[1]  Material facts are those facts that the governing substantive

law identifies as having the potential to affect the outcome of the suit.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine issue as to a

material fact "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."  *Id.*  The nonmoving party "must do more than simply show

that there is some metaphysical doubt as to the material facts."  *Matsushita Electric*

*Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  Instead,

the nonmoving party must show that the evidence is sufficient to support the

resolution of a material factual issue in his favor.  *Anderson*, 477 U.S. at 249.  When

ruling on a motion for summary judgment, the court views the evidence in the light

---

[1]     The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

most favorable to the nonmoving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).

"To prevail in a proceeding to revoke naturalization, the Government must prove its case by clear, convincing, and unequivocal evidence, and leave no issue in doubt."  *United States v. Ekpin*, 214 F. Supp. 2d 707, 712 (S.D. Tex. 2002) (citing *Fedorenko v. United States*, 449 U.S. 490, 507(1981)).  This is a heavy burden, but if the government carries it a district court "lacks discretion" and "is compelled to enter a judgment of denaturalization."  *United States v.  Jean-Baptiste*, 395 F.3d 1190, 1192 (11th Cir.), *cert. denied*, 546 U.S. 852 (2005).

II.  <u>ANALYSIS</u>

A.  <u>Revocation of Naturalization</u>

1.  *Legal Standard*

Title 8 U.S.C. § 1451(a) provides that the order admitting a naturalized citizen to citizenship may be revoked and set aside and that the certificate of naturalization may be cancelled if the order and certificate were "illegally procured or were procured by concealment of a material fact or by willful misrepresentation."  The statute thus provides two independent grounds, either of which alone is sufficient to support revocation and cancellation.  *Jean-Baptiste*, 395 F.3d at 1192-93.  Here, the court only need consider the government's contention that Mwalumba's citizenship was illegally procured.

- 5 -

Citizenship is "illegally procured" within the meaning of § 1451(a) when it is procured by a person who was statutorily ineligible for naturalization. *Fedorenko*, 449 U.S. at 506. To be statutorily eligible for naturalization, an individual must, *inter alia*, demonstrate that during the time period prescribed by the statute he or she "has been and still is a person of good moral character." 8 U.S.C. § 1427(a)(3). Ordinarily the statutory period during which good moral character is required begins five years before the date on which the person's application for naturalization is filed with the INS and ends on the date that the person takes the oath of allegiance and is naturalized as a United States citizen. *Id.* That five-year requirement is shortened to three years for persons who are married to United States citizens. *See* 8 U.S.C. 1430(a).

The concept of "good moral character" is defined by the Immigration and Nationality Act ("INA") and the regulations promulgated under it. Both the INA and the regulations include lists of specified acts and characteristics that automatically preclude a person from establishing good moral character. *See* 8 U.S.C. § 1101(f)(1)-(9); 8 C.F.R § 316.10(b)(1)-(3)(ii). However, committing a listed act or exhibiting a listed characteristic is not the only way that a person can be shown to lack good moral character. Claims of good moral character are evaluated on a case-by-case basis, taking into account the elements enumerated in the INA and the regulations as well as "the standards of the average citizen in the community of

residence." 8 C.F.R. § 316.10(a)(2).  A "catch-all" provision in the statutory scheme

provides that non-enumerated acts or characteristics can, in the absence of

extenuating circumstances, demonstrate that an applicant lacks good moral character.

*See* 8 U.S.C. § 1101(f) ("The fact that any person is not within one of the foregoing

classes shall not preclude a finding that for other reasons such person is or was not of

good moral character."); 8 C.F.R § 316.10(b)(3)(iii) (explaining that in the absence of

extenuating circumstances an "applicant shall be found to lack good moral character

if, during the statutory period, the applicant:  . . . (iii) [c]ommitted unlawful acts that

adversely reflect upon the applicant's moral character, or was convicted or imprisoned

for such acts, although the acts" are not specifically enumerated in the statute or

regulations).

One of the acts that the INA and its regulations specify as precluding a finding

of good moral character is the commission of and conviction for a crime of moral

turpitude.  8 U.S.C. § 1101(f)(3); 8 C.F.R. § 316.10(b)(2)(i).  The INA does not

define the term "moral turpitude."  *Ekpin*, 214 F. Supp. 2d. at 714.  The

determination of whether a crime involves moral turpitude turns on the inherent

nature of the crime, not the circumstances under which it was committed.  *Pichardo v.*

*Immigration and Naturalization Service*, 104 F.3d. 756, 759 (5th Cir. 1997).  The Fifth

Circuit has "repeatedly emphasized that crimes whose essential elements involve

fraud" are crimes of moral turpitude.  *Hyder v. Keisler*, 506 F.3d 388, 391 (5th Cir.

2007).  For example, making a false statement in violation of 18 U.S.C. § 1001 is a crime of moral turpitude.  *Amouzadeh v. Winfrey*, 467 F.3d 451, 457-58 (5th Cir. 2006); *Martinez-Castelan v. Gonzales*, 188 Fed. Appx. 246, 247 (5th Cir. 2006) (per curiam).  So too is committing fraud and misuse of immigration documents in violation of 18 U.S.C. §§ 1546(a)-(b).  See *Omagah v. Ashcroft*, 288 F.3d 254, 259-61 (5th Cir. 2002).

A person who commits and is convicted of a crime of moral turpitude is subject to denaturalization under either of two provisions of the INA, depending on the timing of the conviction.  The statutory and regulatory provisions that are specific to crimes of moral turpitude require that both the commission of and the conviction for[2] a crime of moral turpitude take place before naturalization occurs and citizenship is granted.  *See* 8 U.S.C. § 1101(f)(3) ("No person shall be regarded as, or found to be, a person of good moral character who, *during the period for which good moral character is required to be established*, is, or was . . . (3) a member of one or more of the classes of persons . . . described in [8 U.S.C. § 1182(a)(2)(A)].") (emphasis added); 8 U.S.C. § 1182(a)(2)(A)(i)(I) (describing an alien who is "*convicted of* . . . a crime involving moral turpitude") (emphasis added); 8 C.F.R. §316.10(b)(2)(i) ("An applicant shall

---

[2]        The INA also provides that a person who both commits a crime of moral turpitude and admits to having committed such a crime during the relevant statutory period is barred from being found to be a person of good moral character, 8 U.S.C. § 1101(f)(3) (incorporating by reference 8 U.S.C. § 1182(a)(2)(A)(i)(I)), but that provision is not at issue here.

be found to lack good moral character if *during the statutory period* the applicant:

(i) [c]ommitted one or more crimes involving moral turpitude . . . for which *the applicant was convicted . . ..*") (emphasis added); see also *United States v. Dang,* 488 F.3d 1135, 1140 (9th Cir. 2007) (adopting the view that 8 U.S.C. § 1101(f)(3) "specifically limits an unfavorable moral character determination based on criminal activity to people who were convicted of . . . the relevant crime during the statutory good moral character period"), *cert. denied,* __ U.S. __, 128 S. Ct. 1288 (2008); *Jean-Baptiste,* 395 F.3d at 1193-94 (affirming the district court's determination that an alien who committed a crime of moral turpitude during the statutory period but was not convicted of that crime until after naturalization could only be found to lack good moral character under the statute's "catch-all" provision).  But see *Ekpin*, 214 F. Supp. 2d at 714 (concluding that 8 U.S.C. § 1101(f)(3) and 8 C.F.R. § 316.10(b)(2)(i) only require the commission of a crime of moral turpitude, not the conviction for it, to take place during the statutory period).  If a person commits a crime of moral turpitude during the statutory good-moral-character period but is not convicted of that crime until after gaining citizenship, he or she is subject to denaturalization under the "catch-all" provisions of 8 U.S.C. § 1101(f) and 8 C.F.R § 316.10(b)(3)(iii).  *E.g.*, *Jean-Baptiste* at 1191 ("[A] naturalized citizen who committed certain unlawful acts during the statutory period *prior* to taking the oath of allegiance

- 9 -

but for which he was indicted, arrested and convicted *after* naturalization stands to lose his [citizenship] for lack of good moral character.") (emphasis in original).

## 2. *Application*

Undisputed evidence shows that Mwalumba's order of citizenship and certificate of naturalization were illegally procured within the meaning of 8 U.S.C. § 1451(a).  The government seeks revocation on the ground that Mwalumba's crimes adversely reflect upon his moral character under the "catch-all" provision of 8 C.F.R. § 316.10(b)(3)(iii).  Amended Brief in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") at 13-15.  Mwalumba married a United States citizen in 1991.  Plaintiff's Motion at 2; State of Texas Certificate of Marriage at 1, *located in* Plaintiff's Appendix at 4.  Thus he was required to be a person of good moral character during the period that began three years before the date on which he filed his application for naturalization with the INS and ended on the date of his naturalization.  Mwalumba filed his application for naturalization with the INS on October 29, 1995.  Application for Naturalization at 1, *located in* Plaintiff's Appendix at 9.  He was naturalized on September 17, 1996.  Certificate of Naturalization at 1, *located in* Plaintiff's Appendix at 17.  Therefore, to be eligible for naturalization Mwalumba was required to be a person of good moral character from October 29, 1992, to September 17, 1996.  The undisputed facts show that Mwalumba committed three crimes during the statutory good-moral-character period:  Fraud and

Misuse I (May 23, 1995), False Statement (May 23, 1995), and Fraud and Misuse II (July 14, 1995). As discussed above, it is well-settled in the Fifth Circuit that fraud crimes in general and the three crimes Mwalumba was convicted of in particular are crimes of moral turpitude.

There is also no genuine issue of fact as to whether Mwalumba's crimes adversely reflect upon his moral character. A person who both commits and is convicted of a crime of moral turpitude during the relevant statutory period is specifically barred from establishing good moral character under 8 U.S.C. § 1101(f)(3). The fact that Mwalumba was not convicted of his crimes until after he was naturalized takes him out of the ambit of § 1101(f)(3). However, Mwalumba has not argued -- and it is difficult to imagine how he could -- that the crimes he committed somehow reflect less adversely on his moral character simply because at the time he became a naturalized citizen, he had committed -- but had not yet been convicted of -- these crimes. Mwalumba also has not offered any extenuating circumstances to explain his conduct. The structure and logic of the statutory scheme compel the court to conclude that, under 8 U.S.C. § 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii), Mwalumba was not a person of good moral character during the required period before his naturalization. As a consequence, the United States is entitled to judgment as a matter of law on its claim that Mwalumba's order of citizenship and certificate of naturalization were illegally procured.

B. <u>Breach of the Plea Agreement</u>

A finding that citizenship was illegally procured ordinarily compels a district

court to enter an order of denaturalization. *Fedorekno*, 449 U.S. at 517. However,

Mwalumba contends that he is entitled to summary judgment in this case because the

United States breached the plea agreement by bringing the present civil action for

revocation. The relevant language of the plea agreement states, "The government will

not further prosecute the defendant for any conduct prior to the date of this Plea

Agreement that was part of the same course of criminal conduct as the matters

described in the Factual Resume." Plea Agreement at 4, *located in* Defendant's

Appendix at 17. The United States contends that the plea agreement only obligates

it to refrain from criminally prosecuting Mwalumba. Mwalumba contends that the

plea agreement also obligates the government to refrain from bringing a civil action to

revoke naturalization. "[I]f it is determined that a plea agreement has been breached,

'specific performance of the agreement is called for . . ..'" *United States v. Valencia*,

985 F.2d 758, 761 (5th Cir. 1993) (brackets omitted) (quoting *United States v.

Goldfaden*, 959 F.2d 1324, 1329 (5th Cir. 1992)). Here, specific performance of the

plea agreement would require dismissal of this case. However, the court concludes

that the United States did not breach the plea agreement by filing a civil action to

revoke Mwalumba's naturalization.

1. *Legal Standard*

The determination of whether the government has breached a plea agreement

is a question of law. *United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002).

The party alleging a breach of a plea agreement must prove the facts that establish a

breach by a preponderance of the evidence. *Id.* Plea agreements are contractual in

nature and are interpreted in accordance with "general principles of contract law."

*United States v. Cantu*, 185 F.3d 298, 304 (5th Cir. 1999). A court's primary goal

when construing a contract is to give effect to the intentions of the parties as

expressed in the agreement. *Texas v. American Tobacco Company*, 463 F.3d 399, 407

(5th Cir. 2006). This is accomplished by giving the terms of the contract "their plain,

ordinary, and generally accepted meanings." *Nichols v. Enterasys Networks, Inc.*, 495

F.3d 185, 190 (5th Cir. 2007); *see also* RESTATEMENT (SECOND) OF CONTRACTS

§ 202(3)(a) (1981) (Westlaw current through August 2009) (explaining that, in most

cases, "where language has a generally prevailing meaning, it is interpreted in

accordance with that meaning"). Only if a court first determines that a contract is

ambiguous may it consider parol evidence to determine the parties' intent. *American*

*Tobacco Company*, 463 F.3d at 407. Whether a contract is ambiguous is a question of

law. *Barnard Construction Company v. City of Lubbock*, 457 F.3d 425, 428 (5th Cir.

2007). "If the written contract is worded such that it can be given a certain or

definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Id.*

Interpretation of a plea agreement begins with the agreement's text. See *United States v. Guerrero*, 299 Fed. Appx. 331, 335 (5th Cir. 2008) ("The sole measure of performance is the agreement's express terms.") (citing *United States v. Cates*, 952 F. 2d 149, 153 (5th Cir. 1992)). To determine whether the government has breached the terms of a plea agreement, the court "must determine whether 'the government's conduct is consistent with the parties' reasonable understanding of the agreement.'" *United States v. Garcia-Bonilla*, 11 F.3d 45, 46 (5th Cir. 1993) (quoting *Valencia*, 985 F.2d at 761). This is an objective inquiry: a defendant's subjective belief that the plea agreement has been violated is not, without more, sufficient to prove that a breach has taken place. See *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001). In plea agreements in which the United States promises to refrain from further prosecuting the defendant for specified crimes, the word "prosecute" typically carries a narrow meaning. For example, the government does not breach such a plea agreement if it later seeks an upward departure from the sentencing guidelines based the same crimes that were the subject of the agreement. *United States v. Ashburn*, 38 F.3d 803, 808 (5th Cir. 1994) (en banc), *cert. denied*, 514 U.S. 1113 (1995).

Of particular relevance to the present case, the Fifth Circuit has held that a plea agreement in which the government agrees not to further prosecute the defendant for the conduct that is the subject of the plea does not bar the government from bringing an action for a civil penalty based on that same conduct. *Bickham Lincoln-Mercury Inc. v. United States*, 168 F.3d 790, 792-94 (5th Cir. 1999).  In *Bickham Lincoln-Mercury*, the defendant failed to file a form required by the Internal Revenue Code.  The government prosecuted him for this failure under 26 U.S.C. § 7203.  The defendant signed a plea agreement in which he agreed to pay a fine in exchange for the government's promise that it "would not further prosecute defendant" for his failure to file the form.  *Id.* at 792 (brackets omitted).  The next year, the IRS sought to impose a civil penalty on the defendant under 26 U.S.C. § 6721 based on the same failure to file the required form that had been the subject of the previous criminal prosecution.  The defendant argued that imposition of a civil penalty would be a breach of the plea agreement.  The Fifth Circuit affirmed the district court's determination that the plea agreement did not prohibit the imposition of civil penalties.  *Id.* at 794.  The court pointed to the ordinary meaning of the term "prosecute," distinctions drawn in the case law between criminal prosecutions and civil actions, the separate statutory provisions within the Internal Revenue Code for criminal and civil penalties, and the fact that the plea agreement specifically mentioned prosecution but not "civil liability."  *Id.* at 793-94.

- 15 -

2. *Application*

Here, the court holds that the plea agreement is unambiguous and did not bar the government from bringing this civil action for denaturalization.  The government can only be in breach of its promise in the plea agreement not to further prosecute the defendant if the term "prosecute" is interpreted to include the bringing of a civil action for denaturalization.  But as used in the plea agreement, the term "prosecute" unambiguously means only "bring a criminal proceeding against."  This conclusion follows from the plain, ordinary meaning of the term as well as its construction and usage in the case law.

When the direct object of the verb "to prosecute" is a person (as opposed to a lawsuit), its ordinary meaning is, "To institute and pursue a criminal action against." BLACK'S LAW DICTIONARY 1021 (abr. 8th ed. 2005).  Courts in this circuit and elsewhere have recognized that, in the ordinary course, the term "prosecution" refers exclusively to a criminal proceeding.  See, *e.g.*, *Bickham Lincoln-Mercury*, 168 F.3d at 793 (contrasting "prosecution," which refers to a criminal proceeding, with "action," which refers to a civil proceeding); *United States v. Streich*, 560 F.3d 926, 930 (9th Cir.), *cert. denied*, __ U.S. __, 130 S. Ct. 320 (2009) (rejecting the contention "that a promise not to prosecute means more than merely a promise not to charge [the defendant] with additional crimes").  Consistent with this ordinary usage, a civil denaturalization suit under 8 U.S.C. § 1451(a) "has never been considered to be a

- 16 -

criminal prosecution," *United States v. Schellong*, 717 F.2d 329, 336 (7th Cir. 1983),

*cert. denied*, 465 U.S. 1007 (1984); see also *United States v. Firishchak*, 468 F.3d 1015,

1026 (7th Cir. 2006) ("[D]enaturalization proceedings are considered equitable

rather than criminal . . ..").

Additionally, this case is squarely controlled by the Fifth Circuit's decision in

*Bickham Lincoln-Mercury*.  There, the IRS prosecuted the defendant under 26 U.S.C.

§ 7203, signed a plea agreement in which it agreed not to further prosecute the

defendant for certain conduct, and later brought a civil action against the defendant

under 26 U.S.C. § 6721 based on the same conduct that was the subject of the plea

agreement.  Here, the United States (through the United States Attorney) prosecuted

Mwalumba under 18 U.S.C. §§ 1001 & 1546(a)-(b), signed a plea agreement in

which it agreed not to further prosecute Mwalumba for certain conduct, and now

brings this civil action under 8 U.S.C. § 1451(a) based on the same conduct that was

the subject of the plea agreement.  Just as the IRS was not in breach of its plea

agreement in *Bickham Lincoln-Mercury*, the United States is not in breach of the plea

agreement here.

Mwalumba nonetheless contends that his plea agreement uses the term

"prosecute" to mean not only "bring a criminal proceeding against" but also "bring a

civil action for denaturalization against."  He advances four arguments in support of

this position.  Each is unavailing.  First, Mwalumba contends that both parties to his

plea agreement reasonably understood it to obligate the government to refrain from

bringing a civil action to revoke his naturalization.  To support this position,

Mwalumba offers parol evidence:  the deposition testimony of Carlton McLarty, the

attorney who represented him during the criminal proceedings, that McLarty

understood that a civil action to revoke naturalization was a form of prosecution that

was barred by the plea agreement.  Oral Deposition of Carlton McLarty dated

November 4, 2009 at 15, 16, 22-23, *located in* Appendix to Defendant's Notice of

Correction to the Appendix to Defendant's Motion for Summary Judgment at 15, 16,

22-23.  However, a court may consider parol evidence only if it first determines that

the contract is ambiguous:  "parol evidence is not admissible to render a contract

ambiguous, which, on its face, is capable of being given a definite certain legal

meaning."  *Lewis v. East Texas Finance Company*, 146 S.W.2d 977, 980 (Tex. 1941);

see also *United States v. Ballis*, 28 F.3d 1399, 1410 (5th Cir. 1994) (explaining that

"parol evidence is inadmissible to prove the meaning of an unambiguous plea

agreement" even where that evidence might indicate that the defendant's

understanding of the agreement varies from its plain terms).  Mwalumba has not

identified -- and the court has not uncovered -- any authority construing the

government's promise not to prosecute a defendant as a promise not to file a civil suit

against that defendant.  Ordinary usage and the relevant case law both establish that

the plea agreement's use of the term "prosecute" unambiguously refers only to the bringing of a criminal proceeding.

Second, Mwalumba contends that the dismissal of Count 6 of his original indictment, which charged him with unlawful procurement of citizenship or naturalization in violation of 18 U.S.C. § 1425(a), is evidence that the "understanding held by all" was that "Mwalumba's naturalization had not been and would not in the future be revoked."  Defendant's Amended Motion for Summary Judgment ("Defendant's Motion") at 3.  This contention is partially correct.  A person who is convicted under 18 U.S.C. § 1425(a) is subject to automatic, mandatory denaturalization under 8 U.S.C. § 1451(e).  See, *e.g.*, *United States v. Odelakon*, 150 Fed. Appx. 374, 376 (5th Cir. 2005).  The dismissal of Count 6 of the indictment did prevent Mwalumba's naturalization from being immediately revoked.  However, nothing in the plea agreement suggests that by dismissing Count 6, the government also promised that it would not at any point in the future bring an action to revoke Mwalumba's naturalization.  Had the parties intended that result, "they could have included specific language to this effect."  *Bickham Lincoln-Mercury*, 168 F.3d at 794; see also *id.* (cautioning against interpreting a plea agreement "in a manner which would add terms that were not agreed upon by the parties").[3]

---

[3]     Mwalumba also contends that, at the time the government entered into the plea agreement with him, the government was aware that he had allegedly failed to disclose some of his criminal activity during his application for naturalization but nonetheless agreed to dismiss Count 6 of the indictment.  Defendant's Motion at 6.

Third, Mwalumba contends that interpreting "prosecution" to mean "bringing a civil action for denaturalization" is the only way to read the plea agreement that does not render the government's promise not to further prosecute Mwalumba "unnecessary redundant and meaningless." Defendant's Motion at 6. According to Mwalumba, all the government promised in the plea agreement was that it would not prosecute him for the criminal activities described in paragraphs 1-3 of the factual resume. *Id.* at 5-6. But those are the same activities to which he was pleading guilty, he explains, so further criminal prosecution was already barred by double jeopardy. *Id.* at 6. This contention misreads the plea agreement. In it, the government promised not to prosecute Mwalumba "for any conduct prior to the date of this Plea Agreement that was part of the same course of criminal conduct as the matters described" in the *entire* factual resume, not just the first three paragraphs. Plea Agreement at 4, *located in* Defendant's Appendix at 17. Paragraph 4 of the factual resume explains that "[f]rom at least 1997 through 1998" the defendant "knowingly executed and attempted to execute multiple schemes and artifices to defraud various

_____

Mwalumba then concludes without any explanation that "in light of the facts and circumstances of this case," the only "logical" way to construe the term "prosecute" in the plea agreement is as including "any civil revocation action." *Id.* This assertion is difficult to make sense of, but it appears to pertain to the government's argument that Mwalumba procured his citizenship by means of misrepresentation and concealment. If so, it is rendered irrelevant by the court's ruling that his citizenship was illegally procured. To the extent that this argument might also be applicable to the government's claim that his citizenship was illegally procured, it merely restates the argument of the above paragraph and is similarly without merit.

federally insured financial institutions." Factual Resume in Case Number 3:98-CR-378-K ("Factual Resume") at 1-2, *located in* Plaintiff's Appendix at 47-48. The remainder of the factual resume articulates several individual instances of bank fraud that were part of those schemes and artifices. Factual Resume at 2-4, *located in* Plaintiff's Appendix at 48-50. The plea agreement was a promise by the government not to prosecute Mwalumba for other instances of bank fraud that were part of the schemes and artifices occurring in 1997 and 1998. For example, paragraph 6 of the factual resume describes an individual instance of bank fraud alleged to have taken place on March 3, 1998. Factual Resume at 2, *located in* Plaintiff's Appendix at 48. Mwalumba was not convicted of this alleged instance of fraud. *See* Criminal Judgment at 1, *located in* Plaintiff's Appendix at 35. If the government had tried to bring criminal charges against Mwalumba based on his alleged actions of March 3, 1998 -- or based on other, then-undiscovered instances of bank fraud committed during 1997 and 1998 -- it would have been in breach of the plea agreement. For these reasons, the term "prosecution" need not be construed to mean "any civil prosecution based on that scheme of conduct" to prevent it from becoming meaningless.

Finally, Mwalumba contends that the plea agreement must prohibit the bringing of a civil revocation action under 8 U.S.C. § 1451(a) because such a civil action is the only to accomplish denaturalization and "all parties believed that the

Plea Agreement would protect Mwalumba's citizenship from revocation."

Defendant's Motion at 6.  This contention simply begs the question of what the

parties reasonably understood the plea agreement to mean.[4]

Therefore, the court concludes that the United States did not breach its plea

agreement with Mwalumba by bringing the present action to revoke his

naturalization.

---

[4]      Mwalumba briefly advances two other arguments that are also without merit.  First, he argues that the government should be compelled to produce documents that he contends would prove that, at the time of his naturalization, the government was aware that he had committed the crimes of Fraud and Misuse I, False Statement, and Fraud and Misuse II.  Defendant's Motion at 7.  Even if that contention is correct  the government's knowledge of Mwalumba's criminal conduct is not a material fact: "an individual has no right to naturalization unless he satisfies all the enumerated statutory requirements, and courts have no discretion to deny the Government relief if the evidence presented establishes that the requirements were not met."  *United States v. Benavides*, 2008 WL 362682, at *3 (S.D. Tex. Feb. 8, 2008) (citing *United States v. Ginsberg*, 243 U.S. 462, 475 (1917), and *Fedorenko*, 449 U.S. at 517)) (internal citations omitted from quote).
          Second, Mwalumba argues that the fact that he submitted his fingerprints to the INS as part of his naturalization process put the government on notice of his entire criminal history and that the government should therefore be estopped from revoking his citizenship.  Defendant's Motion at 8-9.  Mwalumba cites no authority in support of this contention, and with good reason:  the burden was on him to disclose his criminal history, not on the government to discover it.  See *Berenyi v. District Director, Immigration and Naturalization Service*, 385 U.S. 630, 637 (1967) ("[I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect.").

III.  <u>CONCLUSION</u>

For the reasons discussed above, the defendant's motion for summary judgment is **DENIED**, and the plaintiff's motion for summary judgment is **GRANTED**.

Judgment will be entered in favor of the United States.  Within ten days of this date, counsel for the United States shall submit a proposed form of judgment in conformity with this memorandum opinion and order.

**SO ORDERED**.

February 1, 2010.

A. JOE FISH
**Senior United States District Judge**

- 23 -